UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELECTRONIC PRIVACY<br>INFORMATION CENTER<br>1519 New Hampshire Avenue, NW<br>Washington, D.C. 20036<br><br>  Plaintiff,<br><br>  v.<br><br>U.S. DEPARTMENT OF STATE,<br>2201 C Street, NW<br>Washington, D.C. 20520<br><br>  Defendant. | Civil Action No. 25-4224 |

**COMPLAINT FOR INJUNCTIVE RELIEF**

1. This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(a), for injunctive and other appropriate relief, seeking the release of agency records requested by Plaintiff Electronic Privacy Information Center ("EPIC") from Defendant United States Department of State ("State Department").

2. EPIC seeks release of records related to the State Department's communications with, and records that mention, Canary Mission or Betar between January 20, 2025, and the date EPIC's FOIA Request is processed.

3. In this Complaint, EPIC challenges (1) the State Department's failure to make a timely decision about EPIC's FOIA Request; and (2) the State Department's failure to release records responsive to EPIC's FOIA Request.

4. EPIC seeks an injunctive order requiring disclosure of all responsive, non-exempt records and other appropriate relief.

1

## Jurisdiction and Venue

5.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 5 U.S.C. §§ 552(a)(4)(A)(vii), (a)(4)(B), and (a)(6)(c)(i). This Court has personal jurisdiction over Defendant State Department.

6.      Venue is proper in this district under 5 U.S.C. § 552(a)(4)(B).

## Parties

7.      Plaintiff EPIC is a public-interest research organization incorporated as a 501(c)(3) non-profit corporation in Washington, D.C. EPIC conducts government oversight and analyzes the impact of government programs on civil liberties and privacy interests. EPIC publishes reports, whitepapers, blog posts, and a monthly newsletter ("the EPIC Alert"). EPIC also maintains a popular website, epic.org, where EPIC publishes educational resources about emerging privacy and civil liberties issues, including documents obtained from federal agencies under the FOIA. EPIC routinely disseminates information to the public through the EPIC website, the EPIC Alert, and various other news organizations. EPIC is a representative of the news media.[1]

8.      Defendant State Department is a federal agency within the meaning of the FOIA, 5 U.S.C. § 552(f)(1). The State Department is headquartered in Washington, D.C.

## Facts

9.      On January 29, 2025, President Trump issued Executive Order 14188 ("the EO"), announcing his intent to "us[e] all available and appropriate legal tools, to prosecute, remove, or otherwise hold to account the perpetrators of unlawful anti-Semitic harassment and violence."[2]

10.     Soon after, the administration began implementing the EO by arresting and detaining visa holders and permanent residents who had criticized Israeli actions against Palestinians in Gaza

---

[1] *EPIC v. DOD*, 241 F. Supp. 2d 5 (D.D.C. 2003).
[2] Exec. Order No. 14188, 90 Fed. Reg. 8847 (Jan. 29, 2025).

and / or U.S. and U.S.-based institutions' actions in relation to Israel.[3] Some individuals fled the U.S. for fear of adverse action because they spoke out about the humanitarian crisis in Gaza.[4]

11. Canary Mission and Betar are groups that have publicized information about individuals that criticize US and Israeli actions in Gaza.[5] Canary Mission has posted more than 5,000 online dossiers on its website since 2015.[6] On March 24, 2025, Canary Mission posted a new feature on its website, "Uncovering Foreign Nationals," in response to the EO on combating antisemitism.[7]

12. Betar, a group labeled "extremist" by the Anti-Defamation League, boasted that it shared with Trump administration officials a "deport list" of 3,000 non-U.S. citizens who have spoken on Palestinian human rights.[8] The group claims to have collected "documentation, including tapes, social media and more" to support its deportation list designations.[9]

---

[3] Jake Offenhartz, *Immigration agents arrest Palestinian activist who helped lead Columbia University protests*, Associated Press (Mar. 9, 2025), https://apnews.com/article/columbia-university-mahmoud-khalil-ice-15014bcbb921f21a9f704d5acdcae7a8; Jake Offenhartz, Kathy McCormack & Michael Casey, *Turkish student at Tufts University detained*, *video shows masked people handcuffing her*, Associated Press (Mar. 26, 2025), https://apnews.com/article/tufts-student-detained-massachusetts-immigration-6c3978da98a8d0f39ab311e092ffd892; Karina Tsui, *What we know about the federal detention of activists, students and scholars connected to universities*, CNN (April 2, 2025), https://www.cnn.com/2025/03/31/us/what-we-know-college-activists-immigration-hnk/index.html; Laura Romero, Armando Garcia & Mariama Jalloh, *Columbia University associate of Mahmoud Khalil arrested by DHS*, ABC News (April 14, 2025), https://abcnews.go.com/US/columbia-university-associate-mahmoud-khalil-arrested-dhs/story?id=120800223; Jaclyn Diaz, *What we know about the case of detained Georgetown professor Badar Khan Suri*, NPR (March 21, 2025), https://www.npr.org/2025/03/21/nx-s1-5336173/immigration-georgetown-university-professor; Jonah Bromwich & Hamed Aleaziz, *Columbia Student Hunted by ICE Sues to Prevent Deportation*, NY Times (March 24, 2025), https://www.nytimes.com/2025/03/24/nyregion/columbia-student-ice-suit-yunseo-chung.html.

[4] Luis Ferré-Sadurní & Hamed Aleaziz, *How a Columbia Student Fled to Canada After ICE Came Looking for Her*, N.Y. Times (Mar. 15, 2025), https://www.nytimes.com/2025/03/15/nyregion/columbia-student-kristi-noem-video.html; Miles Klee, *Cornell University Ph.D. Student Leaves U.S. After Visa is Revoked Over Palestine Protests*, Rolling Stone (Apr. 1, 2025), https://www.rollingstone.com/culture/culture-news/palestine-cornell-activist-visa-revoked-1235308276/.

[5] Jon Levine, *Zionist org preps list of foreign pro-Hamas students, hoping Trump will deport them*, N.Y. POST (Nov. 23, 2024, 8:22 AM), https://nypost.com/2024/11/23/us-news/zionist-org-preps-list-of-foreign-pro-hamas-students-hoping-trump-will-deport-them/.

[6] Sophie Hurwitz, *Mother Jones: How a Shadowy Online Blacklist Became a Legal Threat to Pro-Palestinian Activists*, CAIR Chicago (July 8, 2025), https://www.cairchicago.org/blog/mother-jones-how-a-shadowy-online-blacklist-became-a-legal-threat-to-pro-palestinian-activists.

[7] Stephanie Saul, *A Mysterious Group Says Its Mission Is to Expose Antisemitic Students*, NY Times (April 1, 2025), https://www.nytimes.com/2025/04/01/us/israel-gaza-student-protests-canary-mission.html.

[8] *Id*; Levine, *supra* note 5; Anna Betts, *Pro-Israel group says it has 'deportation list' and has sent 'thousands' of names to Trump officials*, The Guardian (Mar. 14, 2024), https://www.theguardian.com/us-news/2025/mar/14/israel-betar-deportation-list-trump.

[9] Betts, *supra* note 8.

13.     Daniel Levy is the spokesperson for Betar US and has publicly discussed sharing Betar's deport list with administration officials.[10] Ross Glick was the executive director of Betar US until January 2025, but has continued to represent that he is providing administration officials with information about supporters of Palestinian human rights.[11]

14.     Mahmoud Khalil, Momodou Taal, and Mohsen Mahdawi, three student activists who were targeted for deportation, were on Betar's list weeks before the administration took action against them.[12] Glick said he discussed Mr. Khalil with Senator Ted Cruz days before his arrest.[13] On March 13, 2025, Betar posted a "deport alert" about Momodou Taal, a British-Gambian graduate student at Cornell University.[14] The State Department moved to revoke Mr. Taal's visa the day after the alert was sent.[15] At least three individuals who were detained since the issuance of the EO had appeared on the Canary Mission website,[16] and seven on the Betar website.[17]

15.     Since the submission of the EPIC's FOIA Request, courts adjudicating challenges to the arrest, detention, and targeting of Palestinian human rights advocates have found that the State Department wrongfully punished them based on constitutionally protected speech.

---

[10] Will Oremus, *A militant Zionist group threatens activists online with a 'deport list'*, The Washington Post (March 29, 2025), https://www.washingtonpost.com/technology/2025/03/29/zionist-palestinians-deportations-x/.
[11] Betts, *supra* note 8.
[12] Alana Goodman, *Trump Pledged to Deport Pro-Hamas Student Visa Holders. Who Are They?,* Wash. Free Beacon (Feb. 11, 2025), https://freebeacon.com/campus/trump-pledged-to-deport-pro-hamas-student-visa-holders-who-are-they/.
[13] Betts, *supra* note 8; Arya Sundaram, *Who is Columbia's Mohsen Mahdawi? Not the threat the US says, associates say.*, Gothamist (April 17, 2025), https://gothamist.com/news/who-is-columbias-mohsen-mahdawi-not-the-threat-the-us-says-associates-say.
[14] Saul, *supra* note 7.
[15] *Id.*
[16] *Id.*
[17] Stephanie Ebbert & Deirdre Fernandes, *Campus activists, misidentified students, a jaywalker. Is this the deportation list the Trump administration is using?*, The Boston Globe (April 17, 2025), https://www.bostonglobe.com/2025/04/17/metro/zionist-group-deportation-lists/.

16. In American Association of University Professors v. Rubio,[18] the testimonies showed that State Department officials relied on information from DHS that originated from Canary Mission and Betar to decide which individuals who advocated for Palestinian human rights to target for deportation.

17. The assistant director of Homeland Security Investigations ("HSI") of DHS was directed by HSI leadership to review individuals listed on the Canary Mission website to produce Reports of Analysis (ROAs).[19] He put together an ad-hoc "tiger team" of analysts to review the more than five thousand names on Canary Mission's website, as well as the names on Betar's website.[20]

18. The National Security Division of HSI compiled the information from ROAs in a letter to the State Department, overlaid with a recommendation of action.[21] The ROAs on individuals identified from Canary Mission had their profiles from Canary Mission attached in full.[22]

19. After the State Department's Bureau of Consular Affairs receives a "referral" from the DHS with a letter and an ROA, the Bureau conducts its own analysis and creates an "action memo" that is sent to the Secretary of State, and the Secretary of State makes a decision on the individual's immigration status.[23]

20. The Senior Bureau Official in the Bureau of Consular Affairs testified that examples of antisemitism that could be grounds for revoking legal status included denouncing Zionism, criticizing Israel's actions in Gaza, calling for an arms embargo on Israel, advocating limits to

---

[18] American Association of University Professors (AAUP) v. Rubio, No. 1:25-cv-10685 (D. Mass. filed Mar. 25, 2025).
[19] Trial Transcript, July 9, vol. 1, 43–44, 107, AAUP v. Rubio No. 1:25-cv-10685 (D. Mass. filed Mar. 25, 2025).
[20] Trial Transcript, July 9, vol. 2, 109–113, 118, AAUP v. Rubio No. 1:25-cv-10685 (D. Mass. filed Mar. 25, 2025).
[21] *Id.* at 98–99.
[22] Trial Transcript, July 9, vol. 1, 42, AAUP v. Rubio No. 1:25-cv-10685 (D. Mass. filed Mar. 25, 2025).
[23] Trial Transcript, July 9, vol. 2, 80–92, AAUP v. Rubio No. 1:25-cv-10685 (D. Mass. filed Mar. 25, 2025).

military aid to Israel, and calling Israel an apartheid state.[24] Calling for a ceasefire, however, was not problematic because "[t]he president has called for a ceasefire."[25]

21. The administration has been unable to point to any support for the attempted deportations except the targeted individuals' involvement in Palestinian human rights demonstrations. For instance, a memo submitted by Secretary of State Marco Rubio to an immigration judge stated that while Mahmoud Khalil was not charged with any criminal conduct and his participation in expressive activities protesting Israel's actions in Gaza were "otherwise lawful," letting him remain in the country would undermine "U.S. policy to combat anti-Semitism around the world and in the United States[.]"[26] Secretary Rubio's memo regarding Mohsen Mahdawi states similar grounds.[27]

22. In Mohsen Mahdawi's case, the court found sufficient evidence presented to show that his speech was protected under the First Amendment.[28] The court found that the threat of being removed from one's community and family, and being blocked from continuing one's study "would chill a person of ordinary firmness from continuing to engage in the protected activity,"[29] and that his release was "essential…not only for him but for others who wish to speak freely without fear of government retaliation."[30]

---

[24] Trial Transcript, July 18, vol. 1, 34–35, AAUP v. Rubio No. 1:25-cv-10685 (D. Mass. filed Mar. 25, 2025); *Id*.
[25] Exhibits to Plaintiff's Pretrial Brief, 370, AAUP v. Rubio No. 1:25-cv-10685 (D. Mass. filed Mar. 25, 2025) (No. 186-1), https://storage.courtlistener.com/recap/gov.uscourts.mad.282460/gov.uscourts.mad.282460.186.1.pdf.
[26] Jake Offenhartz, *Pressed for evidence against Mahmoud Khalil, government cites its power to deport people for beliefs*, Associated Press (April 10, 2025), https://apnews.com/article/mahmoud-khalil-columbia- university-trump-c60738368171289ae43177660def8d34.
[27] *Mahdawi v. Trump*, 781 F. Supp. 3d 214, 220–21 (D. Vt. 2025). *See also* Jonah E. Bromwich & Hamed Aleaziz, *Columbia Student Hunted by ICE Sues to Prevent Deportation*, N.Y. Times (Mar. 26, 2025), https://www.nytimes.com/2025/03/24/nyregion/columbia-student-ice-suit-yunseo-chung.html.
[28] *Mahdawi v. Trump*, 781 F. Supp. 3d 214, 230 (D. Vt. 2025) (quoting Meyer v. Grant, 486 U.S. 414, 425 (1988)).
[29] *Id*.
[30] *Id*. at 234.

23.    In Ozturk's case, the government provided no evidence to support her detention other than the op-ed she co-authored, and the court found that she had made substantial claims that she was detained in violation of her right to free speech under the First Amendment, and punished wrongfully for her constitutionally protected speech in violation of the Fifth Amendment.[31]

24.    In AAUP v. Rubio, the U.S. District Court for the District of Massachusetts ruled that the Trump administration's policy of arresting, detaining, and deporting noncitizen students and faculty members violates the First Amendment.[32]

25.    The public interest in the documents sought by EPIC persists. Trump administration has increased surveillance of student visa applicants' speech concerning Palestinian human rights.[33] The administration is also withholding federal grants from higher education institutions unless they adopt stricter policies around an overly broad definition of antisemitic speech, and some institutions have agreed to do so.[34] Violations of school policies can jeopardize student visas, effectively chilling the free speech of students.

### EPIC's FOIA Request

26.    On April 14, 2025, EPIC submitted a FOIA Request ("EPIC's FOIA Request") to the State Department's Information Access Liaison Office, via email at FOIARequest@state.gov.

27.    EPIC's FOIA Request sought records on communications with or about Canary Mission or Betar. Specifically, EPIC sought:

---

[31] *Ozturk v. Trump*, No. 2:25-CV-374, 2025 WL 1420540, *5-7 (D. Vt. May 16, 2025).
[32] *AAUP v. Rubio*, No. CV 25-10685-WGY, 2025 WL 2777659 (D. Mass. Sept. 30, 2025).
[33] Nahal Toosi & Eric Bazail-Eimil, *State Department unveils social media screening rules for all student visa applicants*, Politico (June 18, 2025), https://www.politico.com/news/2025/06/18/social-media-screening-student-visas-00413160.
[34] Alan Blinder, *How Universities Are Responding to Trump*, NY Times (Dec. 1, 2025), https://www.nytimes.com/article/trump-university-college.html; Elissa Nadworny & Jordan Owens, *What we know about Columbia's $221 million settlement with the Trump administration*, NPR (July 25, 2025), https://www.npr.org/2025/07/25/nx-s1-5479240/columbia-trump-administration-settlement-details; Alana Wise, *Northwestern settles with Trump administration in $75M deal to regain federal funding*, NPR (Nov. 29, 2025), https://www.npr.org/2025/11/29/nx-s1-5624964/northwestern-trump-funding-settlement.

(1) Any email or other communication to, from, or cc Ross Glick, former executive director of Betar US, including any emails to, from, or cc rossglick@gmail.com and any text messages to, from, or cc the telephone number 917.960.8273.

(2) Any email or other communication to, from, or cc Daniel Levy, spokesperson for Betar US.

(3) Any email to, from, or cc any email address

    (i) ending in "betarus.org" or "canarymission.org" or

    (ii) including the term "betar", "canarymission", "canary.mission", "canary-mission", "rossglick", "ross.glick", "ross-glick".

(4) Any email, other communication, memorandum, or presentation containing any of the following terms: "Betar", "betarus.org", "Canary Mission", "canarymission", "canary.mission", "canary-mission", "canarymission.org", "Ross Glick", "rossglick@gmail.com".

28. EPIC sought expedited processing pursuant under 5 U.S.C. § 552(a)(6)(E) and 22 C.F.R. § 171.12(d)(1)(ii).

29. EPIC also sought "news media" fee status under 5 U.S.C. § 552(a)(4)(A)(ii)(II) and a waiver of all duplication fees under 5 U.S.C. § 552(a)(4)(A)(iii) and 22 C.F.R. § 171.16(j)(1).

30. On April 22, 2025, EPIC received a letter via email acknowledging EPIC's FOIA Request ("the Acknowledgment Letter") and provided the tracking number F-2025-15385. The Acknowledgment Letter stated that the State Department would be unable to respond within the 20 days provided by the FOIA statute due to "unusual circumstances," which included the "need to search for and collect requested records from other Department offices or Foreign Service Posts."

31. The Acknowledgment Letter also denied expedited processing, despite the significant public interest in the arrest and detention of noncitizen residents for their political speech, as exemplified by the news articles cited in EPIC's FOIA Request. The letter recited 22 C.F.R. § 171.11(f), the State Department's regulations on when "compelling need" is demonstrated to receive expedited processing. Then, the letter simply stated, "Your request does not demonstrate a 'compelling need' for the requested information" without identifying any basis.

32. Finally, the State Department granted the "news media" status but denied the fee waiver of all duplication fees in the Acknowledgment Letter. The letter stated that EPIC's FOIA Request did not "meet the public interest standard set forth in 22 C.F.R. § 171.16(j)(2)(ii)" without identifying a basis for this decision.

33. The Acknowledgment Letter requested EPIC to provide a "willingness to pay" the costs of duplication for a minimum of two productions totaling $62.50. The Acknowledgment Letter stated that EPIC's FOIA Request will not be processed further until and unless EPIC provided a willingness to pay for duplication fees.

34. On May 21, 2025, EPIC responded via email, communicating EPIC's belief that the denial of expedited processing and fee waiver were in error, that EPIC was unwilling to commit to paying the duplication fee of $62.50, and that EPIC intended to administratively appeal the denials of fee waiver and expedited processing. The same email also requested the State Department not to close the EPIC FOIA Request and not toll the processing of the request during the appeals process.

35. On June 2, 2025, EPIC received an email from the State Department stating that the Office of Information Access Liaison received EPIC's May 21 email.

### EPIC's June 20, 2025, Administrative Appeal

36.     On June 20, 2025, EPIC filed an administrative appeal with the State Department ("EPIC's Administrative Appeal"), via email, appealing the denial of fee waiver and expedited processing.

37.     On July 17, 2025, 18 business days after EPIC filed the appeal, EPIC requested a status update on the appeal via email.

38.     On July 25, 2025, 24 business days after EPIC filed the appeal, the State Department responded via email to acknowledge receipt of the appeal and provided the tracking number A-2025-00330 for the appeal. This email did not provide any substantive decisions on the appeal.

39.     On Sept. 3, 2025, EPIC requested a status update on the appeal via email. On Sept. 8, the State Department's Litigation and Appeals Office responded that the appeal is awaiting review, with no substantive response.

### EPIC's Constructive Exhaustion of Administrative Remedies

40.     Today is the 235th day since the State Department received EPIC's FOIA Request.

41.     The State Department has failed to make a determination regarding EPIC's FOIA Request within the time period required by 5 U.S.C. § 552(a)(6)(A).

42.     5 U.S.C. § 552(a)(6)(A)(i) requires agencies to determine within 20 business days after the receipt of a FOIA request whether to comply with such request.

43.     The Acknowledgement Letter stated cited "unusual circumstances," which, if applicable, gives an agency no more than 10 additional business days to make a determination on a FOIA request under 5 U.S.C. § 552(a)(6)(B)(i). This extends the State Department's period to respond to EPIC's FOIA Request to at most 30 days.

44. Because the Acknowledgement Letter asked EPIC's position regarding the fee assessment, under 5 U.S.C. § 552(a)(6)(A)(ii)(II), the 20-day period for the agency to respond under 5 U.S.C. § 552(a)(6)(A)(i) was tolled until EPIC responded. The Acknowledgment Letter tolled the 30-day period at 6 days on April 22, then the period resumed on May 21 with EPIC's response email, and the 30-day period ended on June 26, 2025.

45. It has been 161 days since the end of the 30-day period.

46. On June 20, 2025, EPIC filed EPIC's Administrative Appeal concerning the State Department's denial of fee waiver and expedited processing.

47. It has been 167 days since the filing of EPIC's Administrative Appeal.

48. The State Department has failed to make a determination regarding EPIC's FOIA Appeal within the 20-day period allowed under 5 U.S.C. § 552(a)(6)(A)(ii) and § 552(a)(6)(E)(ii)(II).

49. The State Department's failure to make a determination on EPIC's FOIA Appeal within the applicable time limits is a violation of the FOIA.

50. Accordingly, EPIC has constructively exhausted all administrative remedies under 5 U.S.C. § 552(a)(6)(C)(i).

## Count I

### Violation of FOIA: Failure to Comply with Statutory Deadlines

51. Plaintiff asserts and incorporates by reference paragraphs 1–50.

52. Defendant State Department, by failing to make a determination regarding EPIC's FOIA request for 235 days, has violated the deadlines set forth in 5 U.S.C. § 552(a)(6)(A)(i) and 5 U.S.C. § 552(a)(6)(B)(i).

53. Defendant State Department, by failing to make a determination on EPIC's FOIA Appeal for 167 days, has violated the deadlines set forth in 5 U.S.C. § 552(a)(6)(A)(ii) and 5 U.S.C. § 552(a)(6)(E)(ii)(II).

54. Plaintiff has constructively exhausted all applicable administrative remedies with respect to EPIC's FOIA Request and FOIA Appeal under 5 U.S.C. § 552(a)(6)(C)(i).

55. Plaintiff is entitled to injunctive relief with respect to the processing of EPIC's FOIA Request and FOIA Appeal and the disclosure of the requested records.

## Count II

### Violation of FOIA: Failure to Grant Request for Expedited Processing

56. Plaintiff asserts and incorporates by reference paragraphs 1–50.

57. Defendant State Department wrongfully denied expedited processing of EPIC's FOIA Request in violation of 5 U.S.C. § 552(a)(6)(E)(i) and 22 C.F.R. § 171.12 (d)(1)(ii) and did not provide reasoning in violation of 5 U.S.C. § 552(a)(6)(A)(i)(I).

58. Defendant State Department has wrongfully failed to make a determination on EPIC's FOIA Appeal from the State Department's denial of expedited processing in violation of 5 U.S.C. § 552(a)(6)(E)(ii)(II) and of 5 U.S.C. § 552(a)(6)(A)(ii).

59. Plaintiff has constructively exhausted applicable administrative remedies with respect to expedited processing of EPIC's FOIA Request under 5 U.S.C. 552(a)(6)(C)(i).

60. Plaintiff is entitled to injunctive relief requiring expedited processing of EPIC's FOIA Request.

## Count III

### Violation of FOIA: Failure to Grant Request for Fee Waiver

61. Plaintiff asserts and incorporates by reference paragraphs 1–50.

62. Defendant State Department wrongfully denied EPIC's request for a fee waiver in violation of 5 U.S.C. § 552(a)(4)(A)(iii) and 22 C.F.R. § 171.16(j)(1).

63. Defendant State Department has wrongfully failed to make a determination on EPIC's FOIA Appeal from the State Department's denial of fee waiver in violation of 5 U.S.C. § 552(a)(6)(E)(ii)(II) and of 5 U.S.C. § 552(a)(6)(A)(ii).

64. Plaintiff has constructively exhausted applicable administrative remedies with respect to a fee waiver of EPIC's FOIA Request.

65. Under 5 U.S.C. § 552(a)(4)(A)(viii)(I), the State Department shall not assess any search fees or duplication fees against EPIC, because the State Department has failed to comply with time limits under 5 U.S.C. § 552(a)(6).

66. Plaintiff is entitled to injunctive relief requiring a fee waiver of EPIC's FOIA Request.

## Count IV

### Violation of FOIA: Unlawful Withholding of Agency Records

67. Plaintiff asserts and incorporates by reference paragraphs 1–50.

68. Defendant State Department has wrongfully withheld agency records requested by EPIC.

69. Plaintiff has constructively exhausted applicable administrative remedies with respect to EPIC's FOIA Request under 5 U.S.C. § 552(a)(6)(C)(i).

70. Plaintiff is entitled to injunctive relief with respect to the release and disclosure of the requested records.

## Count V

### Claim for Declaratory Relief

71. Plaintiff asserts and incorporates by reference paragraphs 1–50.

72.     Plaintiff is entitled under 28 U.S.C. § 2201(a) to a declaration of the rights and other legal relations of the parties with respect to claims set forth in Counts I-IV.

### Requested Relief

WHEREFORE, Plaintiff requests this Court:

A. Order Defendant to immediately conduct a reasonable search for all responsive records;

B. Order Defendant to take all reasonable steps to release non-exempt records;

C. Order Defendant to promptly disclose to Plaintiff all responsive, non-exempt records;

D. Order Defendant to produce the records sought without assessment of search fees;

E. Order Defendant to grant EPIC's request for a fee waiver;

F. Award EPIC costs and reasonable attorney's fees incurred in this action; and

G. Grant such other relief as the Court may deem just and proper.

Respectfully submitted,

Alan Butler, D.C. Bar # 1012128
EPIC Executive Director and President

Jeramie D. Scott, D.C. Bar # 1025909
EPIC Senior Counsel

By: /s/ *Mayu Tobin-Miyaji*
Mayu Tobin-Miyaji, D.C. Bar # 90033340
EPIC Law Fellow

ELECTRONIC PRIVACY
INFORMATION CENTER
1519 New Hampshire Ave., N.W.
Washington, D.C. 20036
(202) 483-1140 (telephone)
(202) 483-1248 (facsimile)

Dated: Dec. 4, 2025